UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH DWAYNE LEWIS,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>RAYMOND MADDEN, Warden,<br><br>　　　　　　Respondent. | Case No. CV 18-05877-AFM<br><br>**MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## BACKGROUND[1]

On February 27, 2014, petitioner was convicted of two counts of attempted murder and one count of assault with a firearm. The jury found various sentence enhancement allegations to be true. Petitioner was sentenced to state prison for 50 years to life plus 18 years.

Petitioner appealed, raising a claim of insufficient evidence and a claim under *People v. Marsden*, 2 Cal.2d 118 (1970). On June 2, 2015, the California Court of Appeal rejected the insufficiency of the evidence claim, but reversed the judgment based upon *Marsden* error. On August 12, 2015, the California Supreme Court denied

---

[1] Certain of these facts are taken from the records lodged in *Lewis v. Montgomery*, Case No. CV 16-08073. The Court takes judicial notice of official court files. *See* Fed. R. Evid. 201.

petitioner's petition for review raising the insufficiency of the evidence claim.

On October 31, 2016, petitioner filed his first petition for a writ of habeas corpus in this Court, raising the sufficiency of the evidence claim. That petition was denied on the merits. *See* ECF No. 26 in Case No. CV16-08073-SJO (AFM).

Meanwhile, on remand, the California Superior Court held a hearing and found that petitioner failed to show good cause for substitution of counsel under *Marsden*. Accordingly, the trial court denied petitioner's *Marsden* motion and reinstated his conviction. Petitioner appealed. On January 30, 2017, the California Court of Appeal affirmed the judgment of conviction. The California Supreme Court summarily denied petitioner's petition for review.

The present petition, filed on July 5, 2018, challenges the state court's determination of petitioner's *Marsden* claim. (ECF No. 1 at 21-34.) On September 27, 2018, respondent filed an answer addressing the merits of petitioner's claim. (ECF No. 17.) Petitioner had to and including October 29, 2018 in which to file a reply. As of the date of this order, petitioner has neither filed a reply nor requested additional time within which to do so. The matter is now ready for decision.

**STANDARD OF REVIEW**

A federal court may not grant a writ of habeas corpus on behalf of a person in state custody

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As used in section 2254(d)(1), the phrase "clearly established federal law"

includes only the holdings, as opposed to the dicta, of Supreme Court decisions existing at the time of the state court decision. *Howes v. Fields*, 565 U.S. 499, 505 (2012) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

Under section 2254(d)(1), a state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" about the correctness of the state court's decision. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). This is true even where a state court's decision is unaccompanied by an explanation. In such cases, the petitioner must show that "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98. Review of state court decisions under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

Under section 2254(d)(2), relief is warranted only when a state court decision based on a factual determination is "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)). Finally, state court findings of fact are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Petitioner's claim was denied in a reasoned decision by the California Court of Appeal. The California Supreme Court subsequently summarily denied review. Thus, the California Court of Appeal's decision constitutes the relevant state court adjudication on the merits for purposes of the AEDPA. *See Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010) (where state supreme court denied discretionary review of decision on direct appeal, the decision on direct appeal is the relevant state-court decision for purposes of the AEDPA standard of review).

Respondent points out that the California Court of Appeal did not expressly cite federal law in its opinion, but argues that nothing rebuts the presumption that the state court rejected the federal component of petitioner's claim. (ECF No. 17 at 11-

12.) Respondent relies upon *Johnson v. Williams*, 568 U.S. 289 (2013), in which the Supreme Court held that "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted." *Johnson*, 568 U.S. at 301. The Supreme Court explained that the presumption may be rebutted in circumstances where "the state standard is less protective" or "if the state standard is quite different from the federal standard, and the defendant's papers made no effort to develop the basis for the federal claim." *Johnson*, 568 U.S. at 302-303.

Here, petitioner does not contend, and nothing in the record suggests, that the state court did not adjudicate the federal aspect of petitioner's *Marsden* claim. Indeed, the presumption is bolstered in the circumstances of this case because California law regarding a defendant's right to substitute counsel effectively incorporates the federal Sixth Amendment standard. *See Robinson v. Kramer*, 588 F.3d 1212, 1216 (9th Cir. 2009) ("a claim that the trial court unconstitutionally denied a defendant's *Marsden* motion is in essence a claim that the trial court failed to recognize that the defendant's complaints as to his counsel were such that, if true, counsel's performance fell below the Sixth Amendment standard for effective assistance of counsel."); *Marsden*, 2 Cal.3d at 123-124 (holding that when a criminal defendant alleges inadequate representation, a trial court must conduct a hearing and that the failure to grant a meritorious *Marsden* motion and replace counsel would violate the defendant's Sixth Amendment right to effective counsel) (citing, *inter alia*, *Gideon v. Wainwright*, 372 U.S. 335 (1963); *Brubaker v. Dickson*, 310 F.2d 30 (9th Cir. 1962)). Therefore, in denying petitioner's *Marsden* claim, the California Court of Appeal necessarily addressed petitioner's Sixth Amendment claim.

Because the state court adjudicated the merits of petitioner's federal claim, it is entitled to deference under the AEDPA. *See Johnson*, 568 U.S. at 301 (where "the state-law rule subsumes the federal standard – that is, if it is at least as protective as

4

the federal standard – then the federal claim may be regarded as having been adjudicated on the merits"); *see, e.g., Rose v. Hedgpeth*, 735 F. App'x 266, 269 (9th Cir. 2018) (where state court decision rejecting petitioner's claim cited California case law premised on the right to counsel and which in turn cited *Gideon v. Wainwright*, 372 U.S. 335 (1963), this indicated that the state court "understood itself to be deciding a question with federal constitutional dimensions," … "and thus that it resolved petitioner's claim 'on the merits,' 28 U.S.C. § 2254(d).") (quoting *Johnson*, 568 U.S. at 305); *Ortis v. Pfeiffer*, 2018 WL 2021266, at *7 n.2 (C.D. Cal. Mar. 8, 2018) (where state court addressed merits of *Marsden* claim without expressly addressing the federal nature of petitioner's claim and neither party attempted to rebut presumption, federal court presumed federal claim was adjudicated on the merits) (citing *Johnson*, 568 U.S. at 301), *report and recommendation adopted*, 2018 WL 2041353 (C.D. Cal. Apr. 26, 2018).

## DISCUSSION

### A. Federal law

The Sixth Amendment right to counsel guarantees to an accused the concomitant rights to conflict-free representation and the effective assistance of counsel. *See Wheat v. United States*, 486 U.S. 153 (1988) (right to assistance of counsel free of actual conflicts); *Strickland v. Washington*, 466 U.S. 668 (1984) (right to the effective assistance of counsel). These rights may be infringed if an accused and his counsel become embroiled in an "irreconcilable conflict." *See Stenson v. Lambert*, 504 F.3d 873, 886 (9th Cir. 2007) ("[F]orcing a defendant to go to trial with an attorney with whom he has an irreconcilable conflict amounts to constructive denial of the Sixth Amendment right to counsel."); *Daniels v. Woodford*, 428 F.3d 1181, 1197 (9th Cir. 2005) (same).

At the same time, "[n]ot every conflict or disagreement between the defendant and counsel implicates Sixth Amendment rights." *Schell v. Witek*, 218 F.3d 1017, 1027 (9th Cir. 2000) (en banc) (citing *Morris v. Slappy*, 461 U.S. 1, 13-14, (1983)

5

(the Sixth Amendment does not guarantee a "meaningful relationship" between the defendant and his counsel)). Instead, a conflict rises to the level of a constitutional violation "only where there is a complete breakdown in communication between the attorney and client, and the breakdown prevents effective assistance of counsel." *Stenson*, 504 F.3d at 886 (citing *Schell*, 218 F.3d at 1026).

The Ninth Circuit has recognized that a trial court's denial of a motion to relieve and/or substitute appointed counsel may implicate these Sixth Amendment concerns. *Schell*, 218 F.3d at 1021 ("Normally, the essence of such a motion is that appointed counsel's representation has in some significant way fallen below the level required by the Sixth Amendment."); *Bland v. California Dep't of Corrections*, 20 F.3d 1469, 1475-1476 (9th Cir. 1994), *overruled in part on other grounds*, *Schell*, 218 F.3d at 1025-1026. Accordingly, it has held that "the Sixth Amendment requires on the record an appropriate inquiry into the grounds for such a motion, and that the matter be resolved on the merits before the case goes forward." *Schell*, 218 F.3d at 1025. In a federal habeas corpus proceeding, the ultimate question is not whether the state trial court abused its discretion with regard to the motion to substitute counsel, but

> whether this error actually violated [petitioner's] constitutional rights in that the conflict between [petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment.

*Schell*, 218 F.3d at 1026.

**B.     The *Marsden* hearing**

In its decision remanding the case to the trial court, the California Court of Appeal explained:

> Outside the presence of the jury, after the first two witnesses had testified, the court stated: "I got a note [from the bailiff] this morning as

> the jury was in the box and were ready to start the case [stating] 'Defendant says he wants to make a *Marsden* motion right now.' I did not recess the case for that purpose, and I just want to explain why. I felt that it was untimely. We are in the middle of trial. I don't think that that's an appropriate time to make a *Marsden* motion, so that's why the court did not interrupt proceedings." Defense counsel stated that "[t]his is the first I have heard about it, Judge. I would have brought it to the court's attention." The issue did not arise again.

*People v. Lewis ("Lewis I")*, 2015 WL 3474114, at *4 (Cal. Ct. App. June 2, 2015). The state appellate court found that the trial court erred by denying petitioner's request for a *Marsden* hearing, but concluded that the proper remedy was a limited remand to allow the court to conduct such a hearing. In addition, it instructed that in conducting the hearing, "[t]he trial shall have discretion to consider defendant's complaint in light of the manner in which his counsel actually performed at trial." *Lewis I*, 2015 WL 347114, at *5.

On remand, the trial court held a *Marsden* hearing and inquired about petitioner's reasons for seeking substitute counsel. Petitioner explained that prior to entering the courtroom on the first day of trial, he told his attorney, Leo B. Newton, that he did not want him as counsel. Newton responded, "they're ready to make a deal, 27 years. You want to take that or we're going to trial right now." Newton then turned and entered the courtroom. (ECF No. 22 (sealed reporter's transcript of *Marsden* hearing) at 3.) When the trial court asked petitioner to identify why he believed Newton's representation was deficient, petitioner answered that (1) counsel failed to object when the prosecutor referred to petitioner as a "stupid criminal"; (2) counsel allowed the victim to testify even though the victim was biased and an admitted gang member; (3) counsel allowed the investigating officer to "badger" the victim/witness by suggesting questions to the prosecutor during trial in order to get the witness to alter his testimony; and (4) counsel did not hire an investigator and

never spoke to petitioner prior to trial. (ECF No. 22 at 4-8.)

The trial court asked Newton to respond to petitioner's allegations. Newton said that he did not recall the prosecutor calling petitioner a "stupid criminal." (ECF No. 22 at 8.) While Newton conceded that he did not hire a private investigator, he explained that petitioner told him a version of events that did not "lineup" with the video recording. Specifically, petitioner told Newton that he had been at the crime scene, but when he realized there could be trouble with rival gang members, he called a taxi and went home. Newton sought to confirm petitioner's story and asked petitioner what taxi company he used, but petitioner could not provide him with the name of the company. Petitioner told Newton it was a "pirate cab." When Newton asked petitioner what phone number he had called, petitioner said he got the phone number from a phone booth. When Newton asked petitioner which phone booth he had used, petitioner told him he did not know. (ECF No. 22 at 9.) According to Newton, he told petitioner that he could not suborn perjury and that he needed evidence that could impinge the facts of the prosecution's case. (ECF No. 22 at 8-9.) Thus, Newton explained, he did not believe there was anywhere to send an investigator. (ECF No. 22 at 9.) With respect to visiting petitioner, Newton affirmed that he visited petitioner both in the courthouse and in jail. (ECF No. 22 at 10.) The trial court asked Newton whether he observed an officer "badger" the prosecutor or witnesses, and Newton responded that he did not. (ECF No. 22 at 10.) Finally, Newton stated that he did not recall petitioner telling him that he did not want Newton as counsel. Newton said that if petitioner had so indicated, Newton would have informed the court. (ECF No. 22 at 10.)

The trial court remarked, "You've been an attorney for a very long time," and asked if Newton felt prepared to defend petitioner and whether he defended petitioner to the best of his ability. Newton responded affirmatively. (ECF No. 22 at 10.)

After Newton offered his responses, the trial court asked petitioner if he had anything else to add. Petitioner reiterated that he had made a proper *Marsden* motion

at the time of trial. The trial court acknowledged that it had erred by failing to conduct a hearing at the time. (ECF No. 22 at 11.)

After hearing petitioner and Newton, the trial court concluded that petitioner's *Marsden* motion lacked merit. The trial court accepted Newton's reason for declining to employ an investigator. It noted that the evidence against petitioner was overwhelming in light of the ankle monitor and the video recording of the crime. In addition, the trial court remarked, "I don't think it was especially wise to be engaged in the activities that the trial evidence showed, but no one, that I can remember, called him a stupid criminal." (ECF No. 22 at 12.) Further, the trial court indicated that, contrary to petitioner's assertion, it did not observe the officer badgering the witness during trial. Finally, the trial court explained that the victim was qualified to testify notwithstanding his status as a gang member. Consequently, the trial court denied petitioner's *Marsden* motion and reinstated his conviction. (ECF No. 22 at 12-13.)

### C. The California Court of Appeal's decision

The California Court of Appeal affirmed the trial court's ruling. It began by restating the relevant law, which provides that a defendant is entitled to substitute counsel if the record shows that appointed counsel "is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." *People v. Lewis (Lewis II),* 2017 WL 396679, at *4 (Cal. Ct. App. Jan. 30, 2017) (quoting *Marsden*, 2 Cal.3d at 118). The state appellate then considered and rejected petitioner's claims as follows:

> On appeal, defendant identifies four purported errors in the trial court's denial of his *Marsden* motion. First, he argues that the fact that Newton did not recall defendant ever saying that he wanted a new attorney shows there was a breakdown in the attorney-client relationship. Second, defendant argues the court erred in asking Newton about his own subjective belief regarding his representation of

9

defendant. Third, he contends the trial court improperly based its decision on its knowledge of how Newton performed in other cases. Finally, he contends that Newton's failure to hire an investigator demonstrates he failed to provide adequate representation. We find no merit in any of these contentions.

Defendant's first three claims of error are based, at least in part, upon unreasonable interpretations of statements made at the *Marsden* hearing.

For example, with regard to defendant's request for a new attorney, Newton said, "If he told me before we started trial that he wanted – didn't want me as an attorney, I would have indicated to the court – I consider that is implying a *Marsden* motion request and I would have told the court that, but I don't have any recollection of that ever having been said." Defendant interprets this statement to mean that Newton claimed that defendant never made any request for new counsel at the trial at all, and, in effect, called defendant a liar. Not so. A more reasonable interpretation of Newton's statement is that Newton did not understand that defendant told him before trial that he did not want Newton to be his attorney – presumably, because Newton did not hear defendant when he purportedly made the statement, or because defendant did not make any such statement to him. In either case, Newton's statement presented a credibility question between defendant and Newton, and the trial court was entitled to accept Newton's explanation. (*People v. Smith* (1993) 6 Cal.4th 684, 696 ["To the extent there was a credibility question between defendant and counsel at the hearing, the court was 'entitled to accept counsel's explanation'"].) Thus, we conclude the court did not abuse its discretion by impliedly rejecting defendant's claim that Newton intentionally ignored his

statement before the start of the trial.

Defendant's second and third claims of error are based upon a short, two-question, colloquy to which defendant ascribes much importance. After asking Newton to respond to defendant's assertions, and hearing those responses, the following colloquy occurred:

"THE COURT: And now you've been around a long time and you've been an attorney for a very long time. Did you believe in your mind that you were prepared to pros – to defend this case? Did you believe you were prepared to defend the case?

"NEWTON: Yes, Your Honor.

"THE COURT: And did you defend it to the best of your ability?

"NEWTON: I believe I did."

The trial court made no further mention of Newton's experience, and there is no indication that the court relied upon either Newton's belief about his representation or the court's purported knowledge of Newton's performance in other cases when it denied defendant's *Marsden* motion. Indeed, the court expressly stated its grounds for denying the motion, all of which grounds were proper considerations for the court in ruling on a *Marsden* motion.

In his final claim of error, defendant asserts that Newton's failure to hire an investigator resulted in inadequate representation because the key issues at trial – defendant's intent and knowledge as an aider and abettor – "could have been affected by investigation." He argues that defense counsel "cannot properly forego investigation[ ] on the grounds that [defendant] did not convince him of his innocence," and that an investigator could have interviewed witnesses and investigated the scene. But Newton stated that he did not hire an investigator, not because defendant did not convince him that he was innocent, but

> because defendant told him a version of the events that was incontrovertibly false, and Newton saw no reason to have an investigator investigate that version of events. While defendant claims that, even if there was no reason to investigate the version of events he told Newton, an investigator nevertheless could have interviewed witnesses and investigated the scene, he fails to identify how such an investigation could have resulted in information relevant to the only real issues at trial – whether defendant knew that the shooter intended to kill and whether defendant intended to aid the shooter in the attempted murder or assault with a firearm. We fail to see (and defendant does not explain) how an investigator would assist in the defense, since the relevant issues were based entirely upon what was in defendant's mind at the time of the offenses. We conclude that under the circumstances of this case, Newton did not provide inadequate representation by failing to hire an investigator, and that the trial court did not abuse its discretion in finding defendant had failed to show good cause for his original request to substitute new counsel.

*Lewis II*, 2017 WL 396679, at *4-5.

### D. Analysis

Petitioner raises several claims of error with respect to his *Marsden* motion. First, petitioner complains that by the time of the *Marsden* hearing – approximately one year after his trial – the recollections of the trial court and Newton had deteriorated. Petitioner contends that the deteriorated recollections rendered the *Marsden* hearing inadequate to protect his rights. (ECF No. 1 at 24.)

Petitioner's contention is belied by the record, which reveals that the trial court conducted a thorough inquiry of petitioner's reasons for requesting new counsel. At the outset of the hearing, the trial court asked petitioner why he was dissatisfied with Newton. It then proceeded to provide petitioner with ample opportunity to explain

12

his reasons. The trial court listened to petitioner's reasons, asked appropriate follow-up questions of both petitioner and Newton, and prior to ruling on petitioner's motion offered him a further opportunity to add "anything else." (ECF No. 22 at 1-11.) Nothing about the purportedly degraded recollections of the trial court or Newton affected petitioner's ability to present his complaints. The relevant question is whether petitioner was given an opportunity to set forth reasons why he believed he had an irreconcilable conflict or a complete breakdown in communication with trial counsel. As reflected in the record, the trial court's inquiry was adequate. *See Stenson,* 504 F.3d at 887 (inquiry adequate where trial court held hearing in which it vetted counsel's reasons for strategy, considered lines of communication, and was satisfied as to attorney's competence); *United States v. Prime*, 431 F.3d 1147, 1155 (9th Cir. 2005) ("Because [the defendant] was given the opportunity to express whatever concerns he had, and the court inquired as to [counsel's] commitment to the case and his perspective on the degree of communication, we find that the hearing was adequate."); *Poe v. Felker*, 2014 WL 10543233, at *13 (C.D. Cal. July 21, 2014) (trial court made an adequate inquiry into *Marsden* motion by giving petitioner "an ample opportunity to explain his reasons for asking to substitute counsel, by not interrupting him or cutting him off, by asking his attorney to reply, by giving [p]etitioner a further opportunity to respond, and by fully addressing [p]etitioner's specific complaints about his attorney before denying the motion"), *report and recommendation adopted*, 2015 WL 6394453 (C.D. Cal. Oct. 21, 2015).

Next, petitioner contends that Newton effectively called petitioner a liar by denying that he heard petitioner's request for substitute counsel. (ECF No. 1 at 24-25.) According to petitioner, Newton's failure to either notice or recall petitioner's statement that he wanted new counsel constitutes proof of a complete breakdown in the attorney-client relationship. (ECF No. 1 at 25-26.)

As an initial matter, the record does not support petitioner's characterization of Newton's statements. Petitioner seems to contend that Newton said that he did not

recall the trial court receiving a note from petitioner during trial in which petitioner requested a *Marsden* hearing. (ECF No. 1 at 26.) Newton never made such a statement. Instead, during the *Marsden* hearing, Newton stated:

> If he told me before we started trial that he wanted – didn't want me as an attorney, I would have indicated to the court – I consider that is implying a *Marsden* motion request and I would have told the court that, but I don't have any recollection of that ever having been said.

(ECF No. 22 at 9-10.)[2]

The remainder of petitioner's argument is based upon his assumption that Newton actually heard petitioner's request but deliberately ignored it. The trial court, however, implicitly rejected such a version of events. The state court's factual finding was not unreasonable in light of the evidence presented to the state court, so it is entitled to a presumption of correctness. *See* 28 U.S.C. §§ 2254(d)(2) & 2254(e)(1); *Taylor v. Maddox*, 366 F.3d 992, 1000-1001 (9th Cir. 2004). Finally, notwithstanding petitioner's interpretation of it, Newton's inability to recall a request petitioner allegedly made a year earlier is insufficient to demonstrate that the attorney-client relationship had broken down at the time of trial. *See, e.g., Plumlee v. Masto*, 512 F.3d 1204, 1210-1211 (9th Cir. 2008) (en banc) (defendant's dissatisfaction at poor relationship with counsel based on subjective distrust that counsel was not acting in defendant's best interest did not create "conflict" requiring appointment of substitute counsel under Sixth Amendment).

Petitioner also complains that the trial court improperly relied upon its generally favorable estimation of Newton's past performance, as well as Newton's own opinion about his performance at petitioner's trial. (ECF No. 1 at 27-28.) As the

---

[2] The Court notes that Newton's statement at the *Marsden* hearing is consistent with his statement at the time the trial court put on the record that it had received a note from petitioner requesting substitute counsel. At that time, Newton remarked, "this is the first I have heard about it, Judge. I would have brought it to the court's attention." (RT 356.)

California Court of Appeal reasonably concluded, however, the trial court did not purport to base its ruling upon either Newton's opinion that he did his best to represent petitioner or its own knowledge of Newton's prior performance. Rather, the trial court explicitly addressed petitioner's specific reasons for his request for substitute counsel and found each reason to be lacking. (*See* ECF No. 22 at 11-12.)

In support of his claim, petitioner also reiterates his complaint that Newton failed to object when the prosecutor called petitioner a "stupid criminal." (ECF No. 1 at 28.) As set forth above, neither the trial court nor Newton recalled the prosecutor calling petitioner a "stupid criminal," and petitioner has failed to point to anything in the record to support his allegation. Respondent raises the possibility that petitioner's claim is based upon the prosecutor's closing argument. (ECF No. 17 at 20 n.6.) To the extent that this is the basis for petitioner's claim, it lacks merit.

During closing argument, defense counsel argued that the prosecution failed to prove that petitioner knew that his fellow gang member intended to shoot at rival gang members. According to defense counsel, it did not make sense that petitioner would conspire to commit a crime when he knew that because of his ankle bracelet, he could be placed at the crime scene. (Reporter's Transcript on Appeal ("RT") 646-647.)[3] In rebuttal, the prosecutor argued:

> As to the ankle bracelet on, criminals do stupid things. You're not here to decide if he is a smart criminal, you are here to decide if he is a criminal. [¶]There is [sic] cameras everywhere. Everybody knows there's [sic] cameras everywhere nowadays. He has a GPS monitor on. Was it stupid? [¶] Sure, but criminals do stupid things all the time, and that's not what this case is.

---

[3] The Court refers to the Reporter's Transcript as lodged by respondent in petitioner's prior federal petition. (*See* Case No. CV 16-8073-SJO (AFM), ECF No. 16.)

(RT 649.)[4]

The prosecutor's argument on rebuttal was not improper, and therefore, counsel's failure to object could not have been deficient. *See Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013) (prosecutors have reasonable latitude in fashioning closing arguments and may argue reasonable inferences based upon the evidence, "including that one of the two sides is lying") (quoting *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993)); *United States v. Henderson*, 241 F.3d 638, 652 (9th Cir. 2001) ("Prosecutors have considerable leeway to strike 'hard blows' based on the evidence and all reasonable inferences from the evidence.") (citations omitted)); *see also*, *Demirdjian v. Gipson*, 832 F.3d 1060, 1073 (9th Cir. 2016) ("We have repeatedly held that, absent egregious misstatements, failing to object to error during closing argument falls within the wide range of reasonable assistance.") (internal quotation marks and citation omitted). More importantly, Newton's failure to object to the prosecutor's rebuttal argument does not demonstrate a total lack of communication or a breakdown in the attorney-client relationship.

Petitioner's complaint that Newton failed to hire an investigator fares no better. Petitioner has not shown that the decision not to hire an investigator constituted deficient performance. As set forth above, the trial court explicitly accepted as valid Newton's explanation for his decision – that is, Newton believed an investigator would not be useful because the video recording contradicted petitioner's patently false version of events. In addition, as the state appellate court explained, the issue at trial was petitioner's state of mind at the time of the shooting, and petitioner failed to explain how an investigator could have benefitted his defense. Although petitioner might have disagreed with Newton's assessment regarding the benefit of an investigator, petitioner has failed to demonstrate that Newton's decision was outside

---

[4] The Court has reviewed the trial transcript, and this is the only instance of the prosecutor referring to anything or anyone as "stupid."

16

the range of reasonable professional assistance. As the Ninth Circuit has explained, "[d]isagreements over strategical or tactical decisions do not rise to level of a complete breakdown in communication." *Stenson*, 504 F.3d at 886.

In sum, the trial court conducted an adequate inquiry that failed to reveal an irreconcilable conflict or a complete breakdown in communication resulting in the constructive violation of petitioner's Sixth Amendment right to counsel. It follows that the state court's determination of petitioner's claim is neither contrary to, nor an unreasonable application of, clearly established federal law. *See, e.g.*, *Larson v. Palmateer*, 515 F.3d 1057, 1066-1067 (9th Cir. 2008) (no Sixth Amendment violation where petitioner's motion for substitute counsel failed to establish any conflict, but rather, petitioner "complained solely about his counsel's strategic decisions and lack of communication with him"); *LaGrand v. Stewart*, 133 F.3d 1253, 1276-1277 (9th Cir. 1998) (rejecting claim of denial of substitute counsel based upon "inadequate time in meetings and of gloomy predictions by trial counsel," noting that the record revealed no "total failure of communication.").

## CONCLUSION

**IT IS THEREFORE ORDERED** that the petition be denied, and this action be dismissed with prejudice.

DATED: 11/16/2018

*[signature]*

ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE